MAHAFFEY, for use, *v.* GRAY *et al.*

Where an execution was levied on cotton of one of the defendants therein, who gave a forthcoming bond to the constable and retained the cotton and did not produce it at the time and place of sale, but interposed an affidavit of illegality; and subsequently it was agreed between this defendant and his surety on the forthcoming bond and the constable, that a fourth person should take the place of the surety, and this was done, this person signing another bond written by the constable and corresponding with the first as to the time of signing and the day of sale, and the former surety was relieved; and thereupon the new surety and the principal sold the cotton, and shortly afterwards the principal's illegality to the execution was dismissed in the superior court, and the constable brought suit on the bond given by the principal and the new surety,—it was error to award a nonsuit because no demand for the cotton had been made upon the principal and the new surety.

May 7, 1890.

Bonds. Principal and surety. Demand. Nonsuit. Before Judge HUTCHINS. Gwinnett superior court. September term, 1889.

Reported in the decision.

F. F. JUHAN, for plaintiff.

C. H. BRAND, for defendants.

SIMMONS, Justice.

It appears from the record in this case that Pierce, Cain and Quigg, in December, 1882, obtained a judgment in a justice's court against C. T. Bankstone, principal, and A. H. Gray, as security. Execution was

issued upon said judgment and, on the 2d day of October, 1883, levied on 3,000 pounds of seed-cotton as the property of A. H. Gray, the security. On the same day, Gray gave to Mahaffey, the constable, two forthcoming bonds of $75.00 each, conditioned to deliver the cotton to Mahaffey, the constable, on the 13th day of October following. W. T. Nash was security for Gray on both of these forthcoming bonds. On the 13th day of October, 1883, which was the constable's sale day, the cotton was not produced and delivered by Gray and his security to Mahaffey, but Gray filed an affidavit of illegality to the *fi fa.*, wherein he set up several grounds which he alleged were sufficient to discharge him as security of Bankstone. It seems that the cotton levied upon remained in the possession of Gray until February, 1884, when Gray and J. B. Nash went to Mahaffey and stated that they wished to sell the cotton and buy a horse for Gray. W. T. Nash, the security on the forthcoming bonds, objected to the sale of the cotton unless he was relieved as security on the bonds. J. B. Nash then said he would take the place of W. T. Nash on the bonds and sell the cotton and buy a horse for Gray, and " if the illegality went against Gray, he (J. B. Nash) would pay the money." Mahaffey, the constable, agreed to this, and wrote two other bonds and dated them to correspond with the first bonds, both as to time of signing and the day of sale. The bonds were then signed by Gray and J. B. Nash, and W. T. Nash, the former security, was relieved, J. B. Nash taking his place. Gray and J. B. Nash sold the cotton and bought the horse. Shortly after these new bonds were executed, the illegality of Gray to the *fi. fa.*, which had been appealed by consent to the superior court, was dismissed in that court. In February, 1889, Mahaffey, the constable to whom the bonds were made payable, brought suit thereon for the use of the plain-

tiff in *fi. fa.* against Gray as principal, and J. B. Nash as security. On the trial of the case, after the above recited facts were in substance introduced before the jury, upon motion of defendants' counsel the trial judge awarded a nonsuit on the ground (the bill of exceptions alleges) that no demand for the cotton had been made by Mahaffey upon Gray and J. B. Nash, to which ruling the plaintiff excepts and assigns the same as error.

We think the court erred, under the above stated facts, in granting a nonsuit in this case. The conditions of the original forthcoming bonds signed by W. T. Nash were to produce and deliver the property on the 13th day of October, 1882, at the place of the constable's sale in the 408th district G. M. The property was advertised for sale upon that day. It was not produced and forthcoming on that date, and the conditions of the bonds were broken by this failure to produce and deliver the property. This was known to J. B. Nash when he took the place of W. T. Nash as security upon the bonds. The bonds were given to the constable, Mahaffey, for his protection. He had, therefore, the right to relieve W. T. Nash and allow J. B. Nash to be substituted in his place, and the effect of the agreement made by Mahaffey with J. B. Nash was to substitute J. B. Nash in the place of W. T. Nash, J. B. Nash assuming the latter's obligations and liabilities. Mahaffey also had the right to agree not to bring suit upon the bonds until the illegality of Gray had been disposed of. It was simply a suspension of his right to sue upon the bonds until the illegality had been determined; and when it had been disposed of against Gray, and J. B. Nash failed to pay the money, Mahaffey, as constable, had a right to sue upon the bonds. J. B. Nash having taken the place of W. T. Nash as security upon the bonds, under the facts of

this case, could not defend upon the ground that he signed the bonds subsequently to the 13th day of October, 1882, after the condition had been broken, because, as we have said, he stood in the place of W. T. Nash, assuming all of the latter's liabilities, and was therefore liable for the non-production of the property on the 13th day of October, 1882, although the bonds upon which he appeared as security were signed by him after that time but dated back to the 2d of October, 1882. *Rodgers* v. *Rosser*, 57 *Ga*. 319.

*Judgment reversed.*